**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| AUTOZONE DEVELOPMENT CORP., | : | | |
| | : | | |
| and | : | | |
| | : | | |
| AUTOZONE STORES, INC., | : | Civil Action No.: | 05-0476 (RMU) |
| | : | | |
| Plaintiffs, | : | Document No.: | 91 |
| | : | | |
| v. | : | | |
| | : | | |
| THE DISTRICT OF COLUMBIA *et al*., | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANTS' MOTION TO DISMISS[1]

**I.   INTRODUCTION**

The plaintiffs, Autozone Development Corporation and Autozone Stores, Inc., bring suit against the District of Columbia, the National Capital Revitalization Corporation ("NCRC"), and Naylor Road, LLC ("Naylor Road") (collectively, "the defendants") for allegedly violating the Takings Clause of the Fifth Amendment. The defendants[2] move to dismiss, contending that the

---

1   The defendants style their motion as one for summary judgment. Because the defendants challenge the plaintiffs' standing to bring their claims, the court analyzes the defendants' motion as a motion to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(6) (governing defenses in the form of challenges for "lack of jurisdiction over the subject matter"); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-102 (1998) (explaining that a court must determine whether it has jurisdiction to hear a case before proceeding to the merits); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (stating that pursuant to Rule 56(c), summary judgment is proper only after, *inter alia*, adequate time for discovery).

2   Defendant District of Columbia adopts as its own the Motion for Summary Judgment filed by defendant National Capital Revitalization Corporation, defendant Naylor Road and defendant RLA Revitalization Corporation. Def. D.C.'s Response to Defendants' Mot. for Summ. J.

plaintiffs lack standing to bring this suit because they can show no injury in fact. In response, the plaintiffs argue that they suffered an injury because the National Capital Revitalization Corporation Eminent Domain Clarification and Skyland Eminent Domain Approval Act of 2004 ("the Skyland Act"), D.C. Code § 2-1219.19, placed a "cloud" over the plaintiffs' property and made the plaintiffs' rights unassignable. In addition, the plaintiffs claim that they suffered an injury because they were deprived of a portion of the net proceeds recovered in the sale of the property. Because the plaintiffs have not sufficiently alleged that they suffered an injury in fact, the court grants the defendants' motion.

## II.   BACKGROUND

### A.   Factual Background

Defendant Naylor Road formerly owned the parcel of land situated at 2626 Naylor Road, S.E. ("the property"). Third Am. Compl. ("Compl.") ¶ 5. On June 16, 1995, defendant Naylor Road leased the property to a non-party lessee who assigned the leasehold to the plaintiffs on October 21, 1998. Compl. ¶ 5; Defs.' Mot. for Sum. J. ("Defs.' Mot.") at 6. The plaintiffs have continuously occupied and conducted business on the property since 1998. Pls.' Opp'n to Defs.' Mot. for Summ. J. ("Pls.' Opp'n") at 3.

The terms of the plaintiffs' lease grant them the right to assign the lease. Pls.' Opp'n at 9. The plaintiffs' lease also contains a clause which provides that if after a condemnation, the plaintiffs determine that the property is not fit for its existing use, the plaintiffs may terminate the lease. Pls.' Opp'n at 20; Defs.' Mot. at 6. This clause also applies to purchases that are arranged in lieu of a traditional condemnation. Pls.' Opp'n at 20; Defs.' Mot. at 6.

In 1998, D.C. created NCRC as an independent instrumentality to encourage economic development and remove blight. D.C. Code § 2-1219.02; *see also* Compl. ¶ 4; Defs.' Mot. at 2-3. To achieve these purposes, the Skyland Act authorized NCRC to exercise eminent domain powers subject to approval by the D.C. City Council. D.C. Code § 2-1219.19. In 2001, according to the defendant, a neighborhood commission encouraged the government to take action in the Skyland area due to its "abandoned feel" combined with drug and alcohol-related crime.[3] Defs.' Mot. at 4. As a result, NCRC began to work with private developers on a plan to rejuvenate the Skyland area in September, 2002. Compl. ¶ 17; Defs.' Mot. at 4-5. NCRC was able to begin its work with the private developers without exercising its eminent domain powers because, on December 9, 2005, Naylor Road sold the property to NCRC. Pls.' Opp'n at 2-3; Defs.' Mot. at 6. The sale of the property by its terms did not affect the plaintiffs' lease. Pls.' Opp'n at 3 (stating that the subject property remains encumbered by the plaintiffs' lease); Defs.' Mot. at 10.

### B. Procedural History

The plaintiffs brought this suit on March 8, 2005, seeking to enjoin defendant NCRC's exercise of eminent domain over the property. *Autozone Dev. Corp. v. District of Columbia*, 2006 U.S. Dist. LEXIS 11731, at *3 (D.D.C. Mar. 2, 2006). When NCRC purchased the property from Naylor Road in December 2005, the plaintiffs, with permission of the court, filed

---

[3] The plaintiffs dispute this characterization of the neighborhood's condition. Pls.' Opp'n to Defs.' Mot. for Summ. J. ("Pls.' Opp'n") at at 25-26.

a Third Amended Complaint, arguing that the sale materially altered their complaint.[4]  *Id.*  The defendants now argue that none of their actions have harmed the plaintiffs and that the plaintiffs consequently lack the standing to bring this action.

### III.    ANALYSIS

#### A.    Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The court may dismiss a complaint for lack of subject-matter jurisdiction

---

4      In the instant motion, the defendants make several arguments similar to those articulated in their motion to dismiss the second amended complaint.  On March 2, 2006 the court denied the defendants' motion without prejudice to permit the plaintiffs leave to file a third amended complaint.  *Autozone Dev. Corp. v. District of Columbia*, 2006 U.S. Dist. LEXIS 11731 at *14 (D.D.C. Mar. 2, 2006).  The plaintiffs now argue that the law of the case doctrine requires the court to conclude that the plaintiffs have made a requisite showing of ripeness and standing because the court's opinion resolved a motion containing these arguments.  Pls.' Opp'n at 5.  Contrary to the plaintiffs' assertion, however, the court's previous opinion addresses neither the plaintiffs' claims nor the defendants' responses to these precise issues.

only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B.   Legal Standard for Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. U.S. CONST. ART. III, § 2, cl. 1. These prerequisites reflect the "common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Consequently, "a showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Defenders of Wildlife*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104; *City of Waukesha v.*

*Envtl. Prot. Agency*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam).  The extent of the plaintiff's burden varies according to the procedural posture of the case.  *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002).  At the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice.  *Id.*  On a motion for summary judgment, however, the "plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true."  *Id.* at 899 (citing Federal Rule of Civil Procedure 56); *accord Fla. Audubon*, 94 F.3d at 666.

To demonstrate standing, a plaintiff must satisfy a three-pronged test.  *Sierra Club*, 292 F.3d at 898 (citing *Defenders of Wildlife*, 504 U.S. at 560).  First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical.  *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103).  Second, the injury must be fairly traceable to the defendant's allegedly unlawful conduct.  *DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1856 (2006).  Finally, it must be likely that the requested relief will redress the alleged injury.  *Byrd*, 174 F.3d at 243.  Our court of appeals has made clear that no standing exists if the plaintiff's allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing."  *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001).  Nor is there standing where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged conduct]."  *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

### C.     The Court Grants the Defendants' Motion to Dismiss

The defendants assert that the court lacks subject-matter jurisdiction because the plaintiffs have not suffered an injury in fact. Defs.' Mot. at 8. Specifically, the defendants argue that NCRC's acquisition of the property had no effect on the plaintiffs' leasehold interest because the property remains encumbered by the plaintiffs' lease. *Id.* at 10. In response, the plaintiffs allege that when defendant NCRC purchased the property from defendant Naylor Road, the imminent threat of condemnation created a "cloud" over the plaintiffs' leasehold interest. Pls.' Mot. at 7-10. To the plaintiffs, this "cloud" has rendered their right to assign the lease economically worthless. *Id.* at 9. The plaintiffs alternatively claim that the sale was the legal equivalent of a condemnation proceeding. *Id.* at 10. Under this theory, the plaintiffs allege that they were wrongly denied a portion of the sale proceeds because their lease grants them a share of any condemnation award. *Id.* at 17. The court analyzes the plaintiffs' standing under each of these theories.

### 1.     The Plaintiffs Have Failed to Allege Injury Based on Their "Cloud" Theory

The plaintiffs have the right to assign their leasehold interest in the property. Pls.' Opp'n at 9. Accordingly, their first claim of injury is that the sale of the property placed a "cloud" over their right to assign their leasehold interest, thereby depriving them of a property right. Pls.' Opp'n at 9-10. In support of the argument that they have standing to pursue their claims, the plaintiffs submit an affidavit from an expert who asserts that the plaintiffs will be unable to assign their lease rights as a result of the property sale. Milam Aff. ¶ 6 (July 24, 2006). The defendants counter that the plaintiffs' leasehold interest remains unaffected and, therefore, they have suffered no injury. Defs.' Reply at 6-7.

To meet the injury in fact requirement, the plaintiffs must demonstrate a concrete, actual, or imminent injury. *Byrd*, 174 F.3d at 243; *see also Advanced Mgmt. Tech., Inc. v. Fed. Aviation Admin.*, 211 F.3d 633, 636 (D.C. Cir. 2000) (explaining that "[s]tanding cannot be 'inferred argumentatively' but rather 'must affirmatively appear in the record'") (quoting *Spencer v. Kemma*, 523 U.S. 1, 10-11 (1998) (internal quotations omitted)). As evidence that they have suffered an injury, the plaintiffs' expert represents that the plaintiffs' right of assignment has become worthless because the property's sale will drive away all potential assignees.[5] Milam Aff. ¶ 6. Significantly, the plaintiffs' expert fails to identify any potential assignee who was actually affected by the alleged cloud. *National Wrestling Coaches Ass'n v. Dept. of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004) (stating that a plaintiff failed to demonstrate standing by speculating as to the behavior of "third parties that [were] the direct cause of the plaintiff's injuries"). Indeed, the plaintiffs have not asserted that they have attempted to assign the lease or that the defendants' actions hindered the plaintiffs' exercise of their right to assign the leasehold interest.

Although the expert's affidavit explains how a hypothetical assignee might react to the sale of the property, unsupported speculation regarding the future actions of non-parties does not constitute injury to the plaintiffs. *J. Roderick MacArthur Found. v. Fed. Bureau of Investigation*, 102 F.3d 600, 606 (D.C. Cir. 1996) (concluding that the plaintiff failed to establish standing because it could not identify a potential grantee whose behavior was actually affected

---

5  The plaintiffs assert that the court should take judicial notice of this fact. This court declines plaintiffs' invitation to relieve them of their burden of establishing the requisite specific facts that confer standing. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (stating that the court ought not presume facts missing from an affidavit "because without them the affidavits would not establish the injury that they generally allege").

by defendant FBI's maintenance of files on the plaintiff). Because the plaintiffs have not alleged that the sale of the property has actually affected their right to assign their lease, they fail to allege an injury in fact.

### 2. The Plaintiffs Have Not Alleged that They Were Wrongly Denied a Portion of the Net Proceeds

Alternatively, the plaintiffs argue that sale of the property, notwithstanding the fact that it occurred outside of any "formal condemnation proceeding, . . . constitutes the functional and legal equivalent of a taking." Pls.' Opp'n at 10. The plaintiffs reason that they suffered an immediate economic injury when the defendants failed to share with them a portion of the proceeds from the sale of the property. *Id*. at 12-18. The defendants counter that even if the sale were the equivalent of a condemnation action, the only interest condemned was that of Naylor Road. Defs.' Reply at 5. According to the defendants, because the sale of the property expressly left the plaintiffs' lease intact, the sale of the property is not the equivalent of a taking of the plaintiffs' interest. *Id*. Finally, the defendants maintain that because the plaintiffs' leasehold remains unaffected by the sale, they have not suffered an injury. *Id*. at 6.

The parties agree that D.C. eminent domain law applies to this case. The plaintiffs argue that "[t]he District of Columbia follows the unit rule" of condemnation, meaning that a condemning authority is required to pay the entire value of land as if it belonged to one person. Pls.' Opp'n at 16-17. In other words, if the sale of the property were the functional equivalent of a taking, NCRC would have to pay Naylor Road for all the interests in the property, including the plaintiffs' lease. Then, defendant Naylor Road would be required to give the plaintiffs the portion of the proceeds that represented their lease.

In support of this contention, the plaintiffs cite *Carlock v. United States*, 53 F.2d 926 (D.C. Cir. 1931). *Carlock*, however, involved the condemnation of all the interests associated with a property, not the sale of the property which expressly left a lease intact, as is the case here. Although the *Carlock* court explained that the so-called "unit rule" method of compensation was proper in that case, it did not prescribe that method for all condemnations. The court stated that "in proceedings instituted to condemn the reversionary interest, *as well as the leasehold interest*, the rule is to ascertain the entire compensation to be allowed as though the entire title or estate in the property belonged to one person, and then to apportion the sum between the holders of the different interests." 53 F.2d at 927 (quoting *Baltimore City v. Latrobe*, 101 Md. 629 (Md. 1905)) (emphasis provided). The *Carlock* court also stated that the condemning authority should not be required to "pay for the two interests more than the portion taken would be worth if owned by one person" and elsewhere stated that this rule applies "[w]hen the entire property included in a lease is taken." *Id*. Put simply, when all of the interests in a land are condemned, the total amount paid by the condemning authority to everyone with an interest should not be more than the amount it would pay if only one person owned the land. The circumstances at play here differ from those in *Carlock* in two ways.

First, the property has not been condemned, and, therefore, no calculation of just compensation is necessary. Second, assuming *arguendo* that the sale were the legal equivalent of a condemnation, the sale did not affect all the interests in the land because it expressly left the plaintiffs' interest intact. D.C. case law provides that, in the context of a taking, the rights of owner and tenant are distinct, and both require a particularized calculation for just compensation. *United States v. Seagren*, 50 F.2d 333, 335 (D.C. 1931) (stating that just compensation "deals

with persons, not with tracts of land" and distinguishing the rights of the landlord from the rights of the tenant) (referencing *Boston Chamber of Commerce v. Boston*, 217 U.S. 189 (1910)).  In addition, a tenant's right for which he is entitled to compensation "is the right to remain in undisturbed possession to the end of the [lease] term." *Wrenn v. Smith*, 41 F.2d 972, 973 (D.C. 1930).  It is undisputed that the plaintiffs have remained in possession of the disputed property and that the property's sale was expressly made subject to the plaintiffs' lease.  Pls.' Opp'n at 3; Defs.' Mot. at 10.  The sale of the property, in other words, contemplated the continuation of the lease.  *See Jabbour v. Bassatne*, 673 A.2d 201, 203 (D.C. 1996) (explaining that D.C. law "assumes that the meaning ordinarily ascribed to those word reflects the parties' intentions") (quoting *Obelisk Corp. v. Riggs Nat'l Bank of Washington, D.C.*, 668 A.2d 847, 853 (D.C. 1995)).  Because the plaintiffs' lease remains intact, they have not lost their right to retain possession of the property until the end of their lease term and have suffered no injury.

What's more, the statute itself contemplates that D.C. may execute a condemnation on less than the full interest in a property.  Pursuant to § 16-1314 of the D.C. Code, after the District initiates a proper condemnation, "title to the property in fee simple absolute, or such less estate or interest therein as is specified . . . shall vest in the District of Columbia."  D.C. Code § 16-1314(b).  Contrary to the plaintiffs' assertion, therefore, even if the sale were the equivalent of a condemnation, the plaintiffs' are not necessarily entitled to a share of the proceeds as the plaintiffs' leasehold interest was not a part of the sale.  Based on the terms of the contract, as represented by the parties, Defs.' Mot. at 6-7, the consideration exchanged for the property necessarily represented the value of Naylor Road's interest as encumbered by the plaintiffs' lease.  *Independence Mgmt. Co., Inc. v. Anderson & Summers, LLC*, 874 A.2d 862, 867 (D.C.

2005) (explaining that "a court must honor the intentions of the parties" as reflected in the language of a contract) (quoting *Bragdon v. Twenty-Five Twelve Assocs. Ltd. P'ship*, 856 A.2d 1165, 1170 (D.C. 2004)).  Stated differently, the net proceeds from the sale of the property were exchanged for Naylor Road's interest, not the plaintiffs' interest.  Because their lease remains undisturbed and the sale price did not include the value of their lease, the plaintiffs are not entitled to a share of the net proceeds.  Accordingly, the plaintiffs have failed to allege that they have standing to bring their claims.

## IV.   CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss.  An order directing the parties in a manner consistent with this memorandum opinion is separately and contemporaneously issued this 29th day of March, 2007.

                                                                  RICARDO M. URBINA
                                                                  United States District Judge